**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**JOSE ADAN LOPEZ-GUEVARA,**<br><br>**Defendant.** | **CRIMINAL NO. RDB-25-010** |

**GOVERNMENT'S SENTENCING MEMORANDUM IN SUPPORT OF A SENTENCE OF 440 YEARS' IMPRISONMENT FOR JOSE LOPEZ-GUEVARA**

Jose Adan Lopez-Guevera is a sexual predator who molested [redacted] for nearly a decade. He stands before this Court having been convicted by a jury of exploiting and molesting [redacted]. He regularly raped [redacted], forced them to engage in oral sex, and recorded much of the abuse. The abuse began when [redacted] were toddlers and continued for years. The defendant manipulated [redacted] to prevent disclosure. The defendant also shared videos of his abuse of [redacted], and those images were circulated on the Dark Web. In addition to the exploitation of [redacted] that were the subjects of the charges, the defendant also raped [redacted], when she was around 5 or 6 years old.

[redacted]

This offense conduct, combined with the need for just punishment, to promote respect for

the law, to afford adequate deterrence, and to account for the likely effects on [redacted], and [redacted] warrant a very significant sentence. The United States therefore respectfully recommends that the Court impose the maximum sentence of 440 years. Such a sentence would be appropriate, reasonable, and fully justified by the circumstances and the factors set forth in 18 U.S.C. § 3553(a).

In his request for lenient sentence, the defendant suggests that he is the victim of childhood trauma as a contributing factor for his conduct in this case, ignoring the evidence of his repeated sexual abuse of [redacted], and also ignoring the revulsion, horror, and depravity of a repeatedly sexually abusing [redacted] children as young as two years old, and disseminating videos of the abuse for the world to view. This case calls out for a significant sentence in order to protect society from the defendant, whose conduct demonstrates that he poses a clear and imminent threat to innocent children. In short, the defendant is a sexual predator from whom the public must be protected.

Accordingly, the only appropriate sentence is the maximum sentence of 440 years' imprisonment.

## I. <u>BACKGROUND</u>

On April 22, 2026, a jury found the defendant guilty of fourteen counts of Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

The sentencing hearing on this matter is scheduled for September 10, 2026. United States Probation Officer Danielle Sanger prepared the Presentence Report (ECF No. 177), which provides for a final offense level of 54, a criminal history category I, and an advisory guidelines range of 5,280 months' (440 years') imprisonment. The government agrees with the guidelines calculation in the Pre-Sentence Report (PSR).

## II. FACTUAL BACKGROUND

The facts in this case are truly disturbing and reflect the danger that the defendant poses to the public, and to children in particular. The evidence at trial proved that between approximately 2015 through 2024, the defendant sexually abused [redacted] children who were between the ages 2 and 11 at the time of the abuse. The defendant produced images and videos of himself and three of the victims engaged in sexually explicit conduct. The counts of convictions arise out of 14 different depictions the defendant produced [redacted], and the defendant's possession of child pornography, including many of those produced depictions, on a mobile phone.

The productions the defendant made were part of his repeated and depraved sexual abuse of [redacted] The abuse began as far back as 2015, when the defendant began the abuse of [redacted] (identified in the indictment as Minor Victim 1). The defendant abused [redacted] regularly through at least age eleven, and the abuse included anal penetration and oral sex. Twelve of the production counts were depictions the defendant produced during various acts of his sexual abuse of [redacted] [redacted] was 5 or 6 years old in some of the depictions, and eleven in others.

The defendant also repeatedly raped [redacted] (identified in the indictment as Minor Victim 3). The rapes occurred at many residences over many years, and [redacted] also witnessed the rapes of [redacted] and [redacted] (not the subject of any of the counts in the indictment). [redacted] was the subject of Count 15, a close-up image depicting the defendant's hands touching her genitals.

The defendant also raped [redacted] (identified in the indictment as Minor Victim 2, and the subject of Count 11). Count 11 depicts [redacted]'s exposed anus with apparent ejaculate on [redacted]'s buttocks. The existence of perianal scarring in this image confirms what was already apparent—even at the age of 2 years, the defendant had already raped [redacted] multiple times

## III. SENTENCING CALCULATION

### a. Statutory Maximum Sentences

The maximum sentences that may be imposed for the counts of conviction are as follows:

i. Sexual Exploitation of Children Manufacture of Child Pornography, 18 U.S.C. § 2251 (Counts One through Five, Seven through Fifteen):

**30 years'** imprisonment with a 15-year mandatory minimum term, 5 years up to a lifetime of supervised release, a $250,000 fine, restitution, forfeiture, and a $100 special assessment on each count. (Total: 5,040 months (420 years)).

ii. Possession of Child Pornography, 18 U.S.C. §2252A(a)(5)(B) (Count Six):

**20 years'** imprisonment, 5 years up to a lifetime of supervised release, a $250,000 fine, restitution, and a $100 special assessment. (Total: 20 years).

### b. Sentencing Guidelines Calculation

The government concurs with the calculations as stated in the PSR, dated June 9, 2026. The defendant's repeated and ongoing rape and exploitation of three of [redacted] that make up the instant offenses result in fourteen separate groups that compute to an offense score of 54. Although this case presents one of "those rare instances where the total offense level is calculated in excess of 43" (and deservedly so), because the guidelines cap out at 43, the defendant's conduct should be treated as a level 43. This would result in a guideline sentence of life if any of the counts of conviction carried a life sentence. Instead, the guideline term of imprisonment is 5,280 months' (440 years') imprisonment. PSR ¶ 228.

## IV. ARGUMENT

The defendant's conduct was disturbing and shows the worst of human nature. The defendant's conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands a life sentence. "In sentencing a defendant, first the district court 'shall consider ... the kinds of sentence and the sentencing range established for ... the applicable category of offense committed

by the applicable category of defendant as set forth in the guidelines.' 18 U.S.C. § 3553(a)(4)(A)." Regarding sentencing, the Supreme Court states, "the Guidelines should be the starting point and initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Davis*, 855 F.3d 587, 595 (4th Cir. 2017) (quoting *Beckles v. United States*, 580 U.S. 256, 265 (2017)). The Guidelines are the "natural starting point from which the sentencing court exercises its discretion under § 3553(a). *United States v. Langford*, 516 F.3d 205, 212 (3d Cir.2008). This Court therefore "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891–92 (2009).

Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Another factor that Section 3553(a) considers is similar sentences for *similarly situated* defendants to avoid sentence disparities. *See* 18 U.S.C. § 3553(a)(6). Consideration of these factors necessitates a life sentence.

**A. Nature and Circumstances of the Offense**

The nature and circumstance of the defendant's offenses are abhorrent and truly shock the conscience. Simply put, the defendant tormented and sexually abused [redacted] for his

sexual gratification. And worse, he recorded it. He did this repeatedly and without remorse. [redacted]

This is, to put it mildly, reprehensible. Of course, all cases involving the sexual abuse of a child involve reprehensible offense conduct. There are, however, a number of factors that make this case more aggravated than even the average case of child sexual abuse.

[redacted]

[redacted]

[redacted] [redacted].

Third, the victims were just toddlers when the abuse of each began. They were, literally speaking, entirely helpless, and initially would have no concept of what they were doing. And yet the defendant took advantage of [redacted] at the most vulnerable point in their lives, all for his

sexual gratification.

Fourth, the defendant's unspeakable abuse of [redacted] anal and vaginal rape–occurred repeatedly over many years. [redacted] described remembering the abuse from when he was as young as five. The videos from the Dark Web indicate that the abuse started even earlier. [redacted] testified that the defendant sexually abused him on a regular basis and that the abuse continued until he was eleven years old. The abuse included anal penetration, masturbation, and oral sex, [redacted] testified that [redacted] also witnessed the defendant raping [redacted] on multiple occasions and witnessed the defendant raping [redacted] when [redacted] was 5 or 6 years old. [redacted]

Although this Court must consider other factors beyond the defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting the sentence here. By consistently exploiting [redacted] vulnerable children, the defendant has wreaked a lifetime of emotional damage on each victim. By recording this sexual abuse, the defendant exposed children to a lifetime of possible exploitation and torment. Any sentence other than the maximum sentence is insufficient and does not adequality account for the offense conduct.

**B. History and Characteristics of the Defendant**

Although the defendant has no prior convictions, his history and characteristics also weigh strongly in favor of a life sentence. As outlined above, up until he was caught, the defendant was raping and exploiting 4 minor children since 2015, when [redacted], was only 3-4 years

old. So, for nearly ten years of his life, the defendant has been terrorizing [redacted] children in the most horrific ways imaginable. He did this repeatedly, without remorse, and he recorded it.

[redacted], does not undermine the government's recommended sentence in this case. There are several reasons for this.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted].

[redacted]

[redacted]

[redacted].

**C. The Need for the Sentence Imposed to Reflect Just Punishment, Promote Respect for the Law, and Deter Future Criminal Conduct.**

There can be no doubt the "prevention of sexual exploitation and abuse of children constitutes a government objective of *surpassing importance*." *New York v. Ferber*, 458 U.S. 747, 757 (1982) (emphasis added). The Court in *Ferber* went on to note that "[i]t has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." *Id*. at 758 n. 9. Quite simply, "sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate." *Kennedy v. Louisiana*, 554 U.S. 407, 468 (2008) (Alito, J., dissenting) (quotation marks omitted).

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring). As the Eleventh Circuit explained in *Irey*: "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d at 1206. The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just deserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing

Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)).

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *Sarras*, 575 F.3d at 1220 (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Here, the seriousness of the crimes, taken with the need for just punishment and the goal of promoting respect for the law, weigh heavily in favor of a life sentence.

**1. <u>Reflect the seriousness of the offense, promoting respect for the law, and provide just punishment.</u>**

This Court's sentence must consider the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act, which included 18 U.S.C. § 2251, was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. But the Act, and its later amendments, are more than prophylactic measures. They reflect value judgments and accepted moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children…as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 43.

The defendant's actions violated federal law, but they also transgressed every conceivable normative principle undergirding our laws. Whether it was [redacted] or [redacted] or [redacted] or [redacted] the defendant repeatedly sought opportunities to exploit children for his deviant sexual desires. The defendant has forever affected [redacted] This Court's sentence must express an appropriate level of social condemnation of his crimes.

**2. Adequate deterrence and need to protect the public.**

Deterrence is important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See Id*. The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). The defendant fits within that class.

The Eleventh Circuit recognized in *Irey* that research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." 612 F.3d at 1214 (citing various studies and reports); *see also United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008), ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.").

[redacted]

It is thus vitally important to deter those who might commit such crimes by imposing significant sentences on those perpetrators who are successfully identified and brought to justice. Imposing a substantial sentence in this case would send a clear signal to other would-be

perpetrators of [redacted] children that such conduct, if detected, will lead to severe criminal consequences.

**D. Avoidance of Unwarranted Sentencing Disparities**

In addressing the element of unwarranted sentencing disparities, this sentencing factor directs the Court to consider "national disparities among defendants with similar criminal backgrounds convicted of similar criminal conduct," which is best determined by reference to the sentence called for by the sentencing guidelines because "one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences." *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008). The government is aware of more than 200 child pornography production cases in which sentences of 60 years or greater have been imposed. Nearly all the defendants in those cases accepted responsibility for their conduct. This includes more than 50 life sentences; one sentence of life plus 85 years; more than 60 sentences greater than 100 years; including dozens of sentences affirmed by appellate courts.

For example, in *United States v. Sarras,* 575 F.3d 1191, 1219-21 (11th Cir. 2009), the Eleventh Circuit affirmed as reasonable a 100-year (1,200 months) sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim. Numerous circuits, including the Fourth Circuit, have upheld lengthy sentences as substantively reasonable in child exploitation cases.[2]

---

[2] *See United States v. Goodwin*, No. 19-30193, 2022 WL 135165, at *3 (9th Cir. Jan. 13, 2022) (mem.) (upholding 100-year sentence for defendant convicted of sexual exploitation of a child and child-pornography possession and transportation); *United States v. Wilkinson*, 706 F. App'x 337, 340 (9th Cir. 2017) (mem.) (upholding 130-year sentence for defendant convicted of sexual exploitation of a child and child-pornography possession); *United States v. Beasley*, 688 F.3d 523, 536-37 (8th Cir. 2012) (upholding 290-year sentence for producer of child pornography); *United States v. Johnson,* 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and § 2252A(b)(1)); *See United States v. Gries*, 877 F.3d 255, 257, 261 (7th Cir. 2017) (upholding life sentence for defendant who engaged in child-exploitation enterprise); *United States v. Betcher,* 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters), *cert. denied,* 555

A chart reflecting just *some* of those cases and the sentences imposed is attached as Government Exhibit A. Notably, the vast majority of the defendants cited in the circuit decisions and in Exhibit A accepted responsibility.

The defendant's focus on cases handed by this Court or in this district is misplaced. As referenced, numerous defendants have been sentenced to life imprisonment and hundreds of years for child exploitation offenses. Additionally, the Fourth Circuit in *United States v. Sueiro*, 59 F.4th 132, 141–42 (4th Cir. 2023), had made it clear that the Court need not engage in a fact by fact, case by case comparison that the defendant insists upon:

> Sueiro correctly states that a sentencing court must consider the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). But here, the district court "necessarily gave significant weight and consideration to the need to avoid unwarranted disparities" when it carefully reviewed and calculated Sueiro's guidelines range at the sentencing hearing. *Gall v. United States*, 552 U.S. 38, 54, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (explaining that "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges").
>
> The district court was not required at sentencing to examine the records of various other people Sueiro identified who had been convicted of similar or more serious crimes. The requirement of procedural reasonableness does not obligate a trial court to engage in case-by-case comparisons of sentences imposed in cases unconnected to the case before the court.[3] *See United States v. Arbaugh*, 951 F.3d 167, 175 (4th Cir. 2020); *United States v. Friend*, 2 F.4th 369, 382–83 (4th Cir. 2021) ("Courts have repeatedly made clear that **comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized**." (quoting *United States v. Rivera-Santana*, 668 F.3d 95, 105 (4th Cir. 2012))). We thus conclude that the district court did not procedurally err in its consideration of unwarranted sentencing disparities under § 3553(a)(6). *See Gall*, 552 U.S. at 50, 128 S.Ct. 586 (explaining that a district court's justification for a sentence must

---

U.S. 1123 (2009); *United States v. Herrick*, 512 F. App'x 534 (6th Cir. 2013) (holding 1140-month sentence imposed on boy scout leader who recorded third-grade boys undressing in locker room to be substantively and procedurally reasonable); *United States v. Paton,* 535 F.3d 829, at 837-38 (8th Cir. 2008) (concluding that life sentence for five counts of production of child pornography was not cruel and unusual punishment in violation of the Eighth Amendment); *United States v. Pugh,* 515 F.3d 1179, 1202 (11th Cir. 2008) ("[W]e have typically treated child sex offenses as serious crimes, upholding severe sentences in these cases"); *United States v. Gazafi*, 594 F. App'x 162, 163 (4th Cir. 2015) (affirming reasonableness of 120 year sentence following defendant's guilty plea to 6 counts of production of child pornography); *United States v. McCroskey*, No. 23-4364, 2024 WL 1596670 (4th Cir. Apr. 12, 2024) (affirming reasonableness of guidelines 960 months' sentence following defendant's guilty plea).

> "allow for meaningful appellate review" and "promote the perception of fair sentencing").

*United States v. Sueiro*, 59 F.4th 132, 141–42 (4th Cir. 2023) (emphasis added). Further, in footnote 3 of *Sueiro*, the Fourth Circuit added the following, making it clear that the avoidance of disparities is nationwide, not local, analysis:

> Nor was the district court required to evaluate regional sentencing statistics for other people that Sueiro argued were "charged with similar conduct," namely, the mean and median sentences for individuals convicted of child pornography crimes in the Eastern District of Virginia. When Sueiro presented these regional statistics to the district court, he not only attempted to sidestep the nationwide mandate of § 3553(a)(6), but he also failed to provide any meaningful context for the data. *See United States v. Franklin*, 785 F.3d 1365, 1371 (10th Cir. 2015) ("The purpose of the sentencing guidelines is 'to eliminate disparities among sentences nationwide.'" (quoting *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008))); *cf. United States v. Abed*, 3 F.4th 104, 177 (4th Cir. 2021) (cautioning against reliance on statistics, and explaining that such information "hardly presents an apples-to-apples-comparison").

*Id. at* 142.

The defendant's argument that the government's recommendation compared to cases in this district and by this Court would create unwarranted sentencing disparities is not just a misapplication of the law as described above, it is factually wrong.

All of the cases cited by the defendant involve circumstances distinguishable from those in this case. *See United States v. Fowler*, RDB-17-644 (defendant sentenced to 40 years following his guilty plea to producing a video of him engaging in intercourse with a 7-year-old victim); *United States v. Sammons*, RDB-17-087 (defendant sentenced to 35 years following his guilty plea to non-hands on production offenses relating to a video of a 12-year-old boy urinating and masturbating and to taking photographs of two minor girls' genitals while they slept.); *United States v. Ranger*, RDB-18-34 (defendant sentenced to 40 years following his guilty plea relating to his sexual abuse of a 7-10 year old boy that lived in his house.); *United States v. Irwin*, RDB-

13-197 (defendant sentenced to 17.5 years following his guilty plea to a single count of production of child pornography relating to his production of single video depicting oral sex and a 6 year old victim), *United States v. Hines*, RDB-16-1788 (defendant sentenced to 23 years following his guilty plea to creating 6 videos of himself using his hand to abuse a sleeping 9-year old).

The defendant's assertion that this case is less serious than the defendant's conduct in *United States v. McCroskey* is similarly misplaced. This Court sentenced McCroskey to 80 years (960 months) in 2023 for abusing and recording the abuse of a toddler, along with her husband. Like the defendant here, McCroskey's abuse included the anal rape of a toddler, and like the defendant, McCroskey distributed videos of the rape on the Dark Web, which led to her apprehension. The abuse in McCroskey, however, involved one victim and took place over 2 years. Further, McCroskey quickly accepted responsibility by pleading guilty to the indictment without a plea agreement. The defendant here, acting alone, raped (anally and vaginally) *four* children over nearly a decade and pressured them to remain silent about the abuse. Attempting to minimize his conduct, the defendant asserts that he was not sadistic. Not true. His rape of [redacted] caused anal scarring, which would have certainly been painful for the toddler. And yet the defendant did it again. But that is not surprising, because by that time the defendant had already and repeatedly raped [redacted] [redacted] and [redacted] including when some were toddlers. That is sadistic. He told children not to tell their mother what he was doing or he would go to jail. Also sadistic. Finally, McCroskey was not offered a plea agreement by the government, yet she quickly accepted responsibility and pled guilty to the indictment without the benefit of a plea agreement.

All of the offenses at issue in these cases are serious, and the defendants who committed them were deserving of the long sentences they received. But here, this defendant repeatedly and horribly abused children beginning when they were as young as two years old. He

repeatedly and opportunistically abused—raped children over years. He caused physical scarring and untold emotional suffering, sentencing each to a lifetime of trauma. Additionally, here, unlike the "comparables" cited by the defense, the defendant has not accepted responsibility for his conduct. He has not expressed remorse. He is more dangerous as a result. His sentence should reflect those differences.

The government knows that 440 years essentially means imposing a life sentence on this defendant. But that is the sentence called for by the guidelines, indicating that such a sentence would also not create an unwarranted sentencing disparity. Therefore, in looking at sentencings within this district and elsewhere, the requested sentenced of the government is commensurate with other similar cases, thereby avoiding disparities as well.

The defendant's reliance on the data from the sentencing commission also does not support his disparity argument. Even accounting for ordinary variations in offense conduct, this data is very likely skewed toward offenders who are far less culpable than this defendant. This is because it focuses on a dataset that includes all offenders with a final offense level of 43. It thus includes offenders whose offense level was properly calculated at a level 43, and not just offenders—like the defendant—whose raw offense level *exceeded* 43 by several levels but defaulted to 43 simply because the Sentencing Table does not go up that high. It also includes defendants who (1) did not exploit victims in person as this defendant did; (2) did not repeatedly rape 4 minor victims over 10 years as this defendant did; [redacted]

Finally, the imposition of the maximum sentence for each count of conviction here will be consistent with other federal courts. The government is aware of the following sentences for defendants who raped children [redacted] and were sentenced *following pleas of*

*guilty* in federal child exploitation cases:

| District | Defendant | Case Number | Year | Sentence |
|---|---|---|---|---|
| ALN | Vasiloff, Gary Steven | 4:07-CR-00337-VEH-PWG | 2008 | 325 years |
| INS | Metzger, David | 09-CR-00188-LJM/KPF1 | 2010 | 235 years |
| MD | Gazafi, William | RWT-13-472 | 2014 | 120 years |
| KS | Grigsby, Philip | 12-CR-10174-JTM | 2013 | 260 |
| MIE | Frazee, James | 10-CR-20082 | 2010 | Life |
| MIE | Pierce, Michael | 16-CR-20192 | 2017 | 90 years |
| MOW | Hajny, James | 14-CR-05022-01 | 2016 | 100 years |
| MT | Threadgill, Kenneth | CR 07-89-GF-SEH | 2008 | 85 years |
| TNM | Green, Daniel W. | 10-CR-00098 | 2015 | 80 years |
| WAE | Rindt, John | 17-CR-05553 | 2020 | 180 years |

Of those defendants, only Frazee is known to have any prior sex offense convictions. Thus, the sentences listed above, are for defendants like Lopez-Guevara, who have no convictions for child sexual abuse, and unlike Lopez-Guevara, accepted responsibility for their criminal conduct.

**E. Impact on the victims**

It is axiomatic that sexual abuse (particularly hand-on sexual abuse) inflicts upon its victim enormous, devastating, and long-lasting harm. That the abuse is inflicted on a child adds a devastating dimension to the harm ordinarily inflicted on rape victims. As the Supreme Court explained while addressing an Eighth Amendment challenge to capital punishment for the rape of a child by her stepfather in *Kennedy v. Louisiana*:

> […] the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood.... Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

554 U.S. at 435 (citing various studies). Those years of anguish can include sudden school failure, unprovoked crying, dissociation, depression, insomnia, sleep disturbances, nightmares, feelings of

guilt and inferiority, and self-destructive behavior, including an increased incidence of suicide. *Id.* at 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting). Sexually exploited children also struggle to develop healthy affectionate relationships, they suffer from sexual dysfunctions, and they have a tendency to become sexual abusers themselves. *See New York v. Ferber*, 458 U.S. 747, 758 n. 9 (1982) (citation omitted).

Researchers have used the findings of the Adverse Childhood Experience ("ACE") Study, which was based on data collected from more than 17,000 people in the mid-1990s, to conclude that women who suffer sexual abuse as a child are more likely to exhibit negative behavioral and mental-health issues as an adult. *See* Shanta R. Dube, et al, *Long-Term Consequences of Childhood Sexual Abuse by Gender of Victim*, 28 AM. J. OF PREVENTIVE MED. 430-38 (2005). Childhood sexual abuse is defined sexual fondling and touching as well as attempted or completed oral, anal, or vaginal intercourse. *Id.* at 432.

According to the study, adult women who experienced any kind of sexual abuse as children are 120% more likely to attempt suicide than women who experienced no childhood sexual abuse. *Id.* at 434. Those women whose childhood sexual abuse consisted of actual or attempted intercourse are more than 260% more likely to attempt suicide. *Id.* at 435. These numbers almost certainly understate the suicide risk, as anyone who has successfully attempted suicide would of course not have been able to respond to the study. In addition, compared to people who have suffered no abuse, women who suffered any childhood sexual abuse are 70% more likely to use illicit street drugs, 60% more likely to have problems with alcohol, and 40% more likely to marry an alcoholic. *Id.* at 434. Additionally, men who were sexually abused in ways that included intercourse were 140% more likely to attempt suicide, 80% more likely to use illicit drugs, 50% more likely to have alcohol problems, and 60% more likely to have current family problems. *Id.*

at 435.

Broader studies of all ACEs—including sexual and nonsexual abuse, parental divorce, incarceration of a family member, and growing up with substance abusers—find other negative consequences for the adults that experienced them, such as an increased risk of premature death, adolescent pregnancy, and fetal death in a first pregnancy. *See* David W. Brown, et al, *Adverse Childhood Experiences and the Risk of Premature Mortality*, 37 Am. J. of Preventive Med. 389 (2009); Susan D. Hillis, et al, *The Association Between Adverse Childhood Experiences and Adolescent Pregnancy, Long-Term Psychosocial Consequences, and Fetal Death*, 113 Pediatrics 320 (2004).

The defendant's conduct caused children to experience numerous ACEs, including sexual abuse, [redacted]. Research suggests that these actions will likely have significant long-term behavioral and health consequences for them, and his criminal conduct will redound to their detriment in profound ways. The Court's sentence should take into account the lifelong burdens that [redacted] may experience as a result of his crimes.

But it gets worse. The defendant did not just make children the victims of childhood sexual abuse, he made them victims of CSAM as well. The defendant memorialized in videos and photographs his abuse of children and uploaded videos to the Dark Web. Videos of a very young [redacted] were found on the Dark Web in late 2024 that led to this prosecution, and still more videos were located by investigators *during* the trial. There may be more videos and images yet to be discovered. What is clear is that other offenders have already accessed and used the videos of [redacted] Because those videos are out there, [redacted]'s victimization did not end [redacted]. He will go through life never knowing whether people he encounters have seen—and been

sexually gratified by [redacted] And depending on how widely those videos are circulated, his victimization may never end at all. [redacted] [redacted] and [redacted] will certainly live with the same fear that the videos and images the defendant created of them during their abuse are out there being watched by others, and they may learn of that further exploitation on any given day.

**F. Length of Sentence Imposed**

The government recognizes that the Court could impose a sentence of far less than 440 years that would effectively be a life sentence. For example, a sentence of 90 years would likely accomplish the goal of specific deterrence. But even a sentence of 90 years is insufficient to meet the other goals of 3553(a). The sentence in this case must send a loud message, both to the public and to others like the defendant in this case, that the most extreme consequences result from the most extreme sexual abuse and exploitation of young victims.

The defendant's conduct is heinous, shocking, depraved, even evil. The defendant engaged in the repeated, violent, *premeditated* sexual violation of [redacted] for 8 to 10 years for the express purpose of satisfying his sexual interest. [redacted], the defendant raped and exploited her, then [redacted] and then [redacted] Finally, the defendant recorded and shared the depictions of his rape of [redacted] with countless others for their sexual gratification. If ever there were a case to warrant consecutive maximum sentences on each count of sexual exploitation of a child, this is the case.

The sentence imposed must reflect the horrific nature of the defendant's conduct. Not just to reflect the "seriousness" of the offense, but to send as strident of a message as this Court can send that this this shocking conduct will result in a shockingly long sentence. If a sentence in the

hundreds of years causes even one future defendant to reconsider sexually abusing a child, then the sentence serves the important goal of general deterrence.

Thus, the Court may rest assured that consecutive sentencing would be in line with "promoting respect for the law" and "avoiding unwarranted sentencing disparities" under the circumstances of this case. Sentences that reflect the true harm perpetrated on a child can exceed the lifespan of a defendant. In this case, the damage inflicted on [redacted] warrants a severe sentence.

## IV. CONCLUSION

No amount of years will ever be enough to rectify the profound harm the defendant caused [redacted] but an effective life sentence that keeps the defendant away from children forever is the only just result in this case. The defendant raped [redacted] in unspeakable ways, he did it repeatedly and over a long period of time, and he distributed the videos of some of that abuse over the Dark Web. This conduct will impact the victims' lives forever. The government requests that this Court sentence the defendant to 440 years' imprisonment, followed by lifetime supervised release.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By: /s/ Paul E. Budlow
Paul E. Budlow
Victoria Liu
Assistant United States Attorneys